```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  SOUTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

ABD-SALAAM NUBA AMUN, f/k/a      )
RA-SON NUBA AMUN, f/k/a          )
Earl Ceaser Cunningham, Jr.,     )
                                 )
     Plaintiff,                  )
                                 )
vs.                              )    CIVIL ACTION 04-0131-BH-M
                                 )
GRANTT CULLIVER,                 )
                                 )
     Defendant.                  )
```

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. (Doc. 36). This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendant's motion for summary judgment (Docs. 32, 33) and Plaintiff's counter-motion for summary judgment. (Doc. 39). For the reasons stated herein, it is recommended that Defendant Grantt Culliver's motion for summary judgment be granted, that Plaintiff's counter-motion for summary judgment be denied, and that Plaintiff's action be dismissed in its entirety.

I.  SUMMARY OF ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. Plaintiff, Abd-Salaam Nuba Amun, f/k/a Ra-Son Nuba Amun, f/k/a Earl Ceaser Cunningham, Jr., is an Alabama Department of Corrections Inmate currently housed at Donaldson Correctional Facility. (Docs. 18, 47). On September 1,

2003, while housed at Holman Correctional Facility, Plaintiff filed an administrative complaint with the Warden of the prison, Grantt Culliver, claiming that the prison administration was "infringing upon [his] religious name free exercise right" by refusing to recognize his new Muslim name.[1]  (Doc. 36 at 2). Plaintiff requested that Culliver add his new, religious name to the prison "visit[or] list," the "location of prisoners list," and any "future correspondence."  (Id. at 3).  Culliver denied Plaintiff's request.  (Id.).

On March 1, 2004, Plaintiff filed the present § 1983 action against Defendant Culliver.  (Doc. 1).  On July 13, 2005, the Court granted Plaintiff's motion to file an Amended Complaint against Culliver, in which Plaintiff alleged that Warden Culliver violated his religious rights under the First Amendment to the United States Constitution and his due process rights under the Fourteenth Amendment by refusing to recognize his legal, religious name with respect to visitor lists, prisoner location lists, and prison correspondence.  (Doc. 36 at 3-4).  In his Amended Complaint, Plaintiff seeks punitive and nominal damages for

---

[1] Plaintiff, who is serving a life sentence without the possibility of parole for capital murder, alleges that, since his incarceration, he has converted to the Islamic faith and, on July 8, 2003, legally changed his name from Earl Ceaser Cunningham, Jr., to Ra-Son Nuba Amun.  (Doc. 36 at 2).  Plaintiff has submitted a copy of an order dated July 8, 2003, entitled "Decree Confirming Declaration as to Change of Name," signed by Judge Michael F. Bolin, Probate Court of Jefferson County, Alabama. (Doc. 1 at 13).  On December 1, 2005, Plaintiff submitted a second order from the Probate Court of Jefferson County, Alabama, dated July 14, 2005, granting Plaintiff's newest request to change his name from Ra-Son Nuba Amun to Abd-Salaam Nuba Amun.  (Doc. 38 at 3).

Culliver's "refusal to have Holman's administration . . . recognize [him] by [his] Muslim name (identity)."  (Id. at 4).

In his Answer to the Amended Complaint and Supplemental Special Report filed on August 12, 2005, Culliver admits that Plaintiff made requests on or about September 2, 2003, and September 17, 2003, to have his religious name added to the prison's visitation list and future correspondence.  (Doc. 32; Doc. 33-1 at 3).  Culliver admits that he denied Plaintiff's requests but maintains that his refusals were not violations of Plaintiff's constitutional rights.  (Doc. 33-1 at 3-8).  Culliver asserts that Plaintiff is free to use both his commitment name and his religious name on mail, applications for visitors, and any other such written communication or documentation; however, Culliver maintains that Plaintiff's request cannot be granted because the current prison computer database will generate lists, receipts, and the like in only one name, which is, by default, the inmate's commitment name, and because requiring the prison staff to hand write Plaintiff's religious name on all documents and receipts would place an onerous burden on an already shorthanded staff.  (Doc. 33-1 at 5-7; Doc. 33-2 at 2).  In addition, Culliver asserts that he is entitled to qualified immunity with respect to Plaintiff's claims for damages.[2]  (Doc. 33-1 at 8-11).

---

[2] Plaintiff is suing Defendant Culliver in his individual capacity only.  (Doc. 36 at 1). "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730,

On October 31, 2005, the Court ordered that Defendant's Supplemental Special Report and Answer to the Amended Complaint be treated as a motion for summary judgment.  (Doc. 37).  On December 1, 2005, Plaintiff filed a counter-motion for summary judgment.  (Doc. 39).  These motions are currently before the Court.

## II.   SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

---

739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right."  Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 322-23.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).  Summary judgment will be granted against a party who fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  DISCUSSION

In this action, Plaintiff seeks redress for alleged constitutional deprivations pursuant to 42 U.S.C. § 1983.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other

       proper proceeding for redress. . . .

As discussed above, Plaintiff claims that, while incarcerated at Holman prison, he requested that Warden Culliver require the prison staff to add his then new, religious name, "Ra-Son Nuba Amun," to his commitment name, "Earl Ceaser Cunningham, Jr.," on the prison visitor lists, inmate location lists, and all future correspondence between the prison and himself.  Warden Culliver refused.  According to Warden Culliver, the current prison computer database cannot generate lists and receipts showing both names, and to hand write inmates' religious names on computer generated lists or hand written documents would be too onerous a task for an already overburdened prison staff. (Doc. 33-1 at 5-7; Doc. 33-2 at 1-3).  The foregoing notwithstanding, inmates are freely allowed to exercise their religious rights by using their religious names, along with their commitment names, on prison mail, applications for visitors, and other prison documentation. (Id.).

The question presented by this action, then, is purely legal, that is, whether Warden Culliver's failure to require the staff at Holman prison to reference Plaintiff's religious name, in addition to his commitment name, on prison visitor lists, inmate location lists, and internal prison documentation and correspondence[3] violates Plaintiff's First Amendment right to the free exercise of

---

[3] Plaintiff has not raised, and therefore this Court will not address, any failure on the part of Defendant to utilize a dual-name policy with respect to inmate identification cards as required by Hakim v. Hicks, 223 F.3d 1244, 1249 (11th Cir. 2000).

religion.[4]  In Hakim v. Hicks, 223 F.3d 1244, 1249 (11th Cir. 2000), the Eleventh Circuit held that inmates must be allowed to use their religious names, in conjunction with their commitment names, on inmate identification cards, which were necessary to obtain such internal prison services as banking, canteen, and notary.  Applying the "reasonableness" standard of Turner v. Safley, 482 U.S. 78, 89 (1987), the Hakim court stated:

> Unlike the strict standards of scrutiny applicable to the constitutional rights of persons in free society, the Supreme Court has adopted a deferential standard for determining whether a prison regulation violates an inmate's constitutional rights.  A prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable.  See Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261, 96 L. Ed.2d 64 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987) (applying Turner standard to free exercise of religion claim).  This Court has described the standard as follows:
>> The Turner Court identified several factors that serve to channel the reasonableness inquiry: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation

---

[4] Although Plaintiff references the Fourteenth Amendment in his Amended Complaint, this claim presents a First Amendment free exercise of religion issue.  See Hakim, 223 F.3d at 1249.

>    represents an "exaggerated
>    response" to prison concerns.
> Pope v. Hightower, 101 F.3d 1382, 1384 (11th
> Cir. 1996) (citing Turner, 482 U.S. at 89-91,
> 107 S. Ct. at 2261-62; Harris v. Thigpen, 941
> F.2d 1495, 1516 (11th Cir. 1991)); accord,
> e.g., Onishea v. Hopper, 171 F.3d 1289, 1299 &
> n.17 (11th Cir. 1999) (en banc).
> <u>The federal courts accordingly have determined
> the Turner standard limits the scope of
> inmates' free exercise rights to use religious
> names in prison</u>. The Ninth Circuit summarized
> the decisions in the following manner:
>>    The cases have consistently
>>    supported three propositions. First,
>>    an inmate has a First Amendment
>>    interest in using his religious
>>    name, at least in conjunction with
>>    his committed name. Second, <u>an
>>    inmate cannot compel a prison to
>>    reorganize its filing system to
>>    reflect the new name</u>. Third, in
>>    states where inmates are allowed to
>>    change names legally, prisons are
>>    generally required to recognize only
>>    legally changed names.
> Malik, 71 F.3d at 727 (citations omitted).
> This Court has held that a dual-name policy
> always is sufficient to satisfy an inmate's
> free exercise claim involving use of a
> religious name. See Fawaad v. Jones, 81 F.3d
> 1084 (11th Cir. 1996). . . .

Hakim, 223 F.3d at 1247-48 (emphasis added, in part). The Hakim court concluded that it was unreasonable for the DOC to refuse to add the inmate's religious name to his prison identification card where there was no evidence that doing so would create an administrative or other burden on the DOC or that the costs were anything other than *de minimis*. Id.. That is not the case here, however.

Defendant Culliver has presented evidence that the reason that he did not require the staff at Holman prison to add Plaintiff's new, religious name to visitor lists, inmate location

lists (also known as "bed assignment" lists), computer-generated receipts, and other such documents is because the prison's current computer database will not generate such documents using both names, and he does not have the funding to replace or change the existing database system.  (Doc. 33-2 at 1-3).  In addition, Culliver has not required the prison staff to hand write inmates' religious names on lists, memos, receipts, and other internal documents because to do so would be too onerous a burden to place on an already shorthanded staff.  (Id.).

Applying the Turner factors to these facts, the Court finds that there is a "valid, rational connection" between Warden Culliver's policy of using commitment names only on inmate lists, receipts, memoranda, correspondence, and the like, and the legitimate governmental interest put forward to justify it, *i.e.*, the lack of funding to change the existing computer database, which will not accommodate a dual name system on such documents, and the burden on prison staff of hand writing inmates' religious names on these documents.  The Court finds that to accommodate Plaintiff's asserted religious right would have a real, substantial, and significant impact on prison staff and the allocation of prison resources and that Defendant's refusal to add Plaintiff's religious name to lists, receipts, and memoranda generated by the prison in which he is referenced is not an "exaggerated response" to prison concerns.

It has not been lost on this Court that this inmate has already changed his religious name twice in two years (from Ra-Son Nuba Amun to Abd-Salaam Nuba Amun).  Plaintiff would have this

Court require prison staff, including prison guards, to stay apprised of his (and all other inmates') name changes and include the latest religious name on every document, whether computer-generated or hand-written, in which the inmate is referenced. Such a position is untenable given the fact that inmates can change their religious names as many times as they wish, thereby significantly increasing the burden on prison staff to accommodate this asserted practice of their religion.  Moreover, inmates at Holman prison are allowed to use their legally changed, religious names, along with their commitment names, on mail, prison forms, applications, and other documentation *that the inmates generate*. Indeed, Plaintiff has not alleged that he is prohibited from exercising his religion in any way other than by Defendant's failure to add his religious name to visitor lists, inmate location lists, and correspondence *that Defendant generates*. Thus, there are alternative means of exercising this constitutional right that remain open to Plaintiff which do not overburden and overtax the prison staff.

In order to establish a free exercise violation in the prison context, Plaintiff must demonstrate that Defendant's interference with a particular practice of his religion is "more than an inconvenience; the burden must be substantial and significantly interfere with Plaintiff's practice of his religious beliefs." Adamson v. McDonough, 2006 WL 839170, *5 (N.D. Fla. 2006).  The fact that the daily rigors of prison administration and limited resources prevent the staff at Holman prison from being able to

include Plaintiff's religious name on every list, memorandum, and receipt generated in the prison in which he is referenced does not constitute a substantial and significant interference with Plaintiff's practice of his religious beliefs, particularly since Plaintiff is free to use his religious name on written material that he produces.

In a similar case, Walee v. Crosby, 2006 WL 680807, *1-3 (M.D. Fla. 2006), the court granted summary judgment for defendants on Plaintiff's First Amendment claim where defendants failed to add Plaintiff's new, religious name to the "religious services call-out" list.  In Walee, the plaintiff submitted a written request to the prison chaplain for permission to attend religious services and was allowed to use both his commitment name and his religious name when making his request.  The chaplain then submitted a list of names to the classification department, from which a "call-out list" was created identifying inmates who were permitted to attend religious services.  The "call-out list" was generated using the DOC's database, which listed inmates alphabetically by their commitment name.  Although the database allowed the inclusion of religious names as an alias, the database could not produce a list based on an alias.  Consequently, alphabetical lists generated from the database included only the commitment name.  The "call-out list" was then used to create a "movement sheet," which was posted in the various housing units and identified the inmates who were allowed to attend religious services.  The "movement sheet" contained the inmates' commitment name only.  Faced with the question, "whether the 'movement sheet'

must use [the inmate's] religious name in addition to his commitment name," the court held:

> Although <u>Hakim</u> states that a dual-name policy is valid "so long as [the inmate] can obtain *all* related services under the dual-name policy" (emphasis original), <u>Hakim</u> was specifically referring to notary services, canteen purchases, and banking transactions, and did not require the DOC to change their database.
> > [Hakim] sought to compel the DOC to follow a dual-name policy . . . in the 'Alpha Run' master database of prisoner information. . . . [T]he district court granted summary judgment to the DOC on the database claim.  The database, although primarily using the commitment name, includes a (non-searchable) field for aliases, to which Hakim's religious name had been added.  Hakim has not appealed these rulings, *which in any event were correct."*  <u>Hakim v. State</u>, 223 F.3d at 1246 (emphasis added).
> Consequently, the defendants' use of only Walee's commitment name on the "movement sheet," which is created from the alphabetical list that is generated by the DOC's database, is not contrary to <u>Hakim</u>.

<u>Walee</u>, 2006 WL 680807 at *1-2.

Federal courts are directed "to give respect and deference to the judgment of prison administrators even in First Amendment challenges raised within the confines of prison."  <u>Adamson</u>, 2006 WL 839170 at *5.  While "correctional authorities may not properly condition the receipt of services or benefits upon [a prisoner's] waiving [his] right [to use a legally adopted name], <u>Malik v. Brown</u>, 71 F.3d 724, 728 (9th Cir. 1995), neither may an inmate compel a prison to reference his new, legally adopted, religious name "in all facets of prison life."  <u>Walee</u>, 2006 WL 680807 at *2

("Walee appears to believe that Hakim requires the DOC allow him to use his religious name, in conjunction with his commitment name, in all facets of prison life. He is wrong."). When the limitations of human, monetary, or technical resources preclude prison staff from using an inmate's religious name in conjunction with his commitment name, such as the circumstances involved here, it is not unreasonable for the staff to use the inmate's commitment name, and to do so does not violate the inmate's First Amendment constitutional rights. This Court is not prepared to order Defendant to replace the computer system at Holman prison and/or to order his staff to hand write Plaintiff's religious name on every document in which Plaintiff is referenced so that Plaintiff can exercise his religion by having both of his names printed on a canteen receipt or visitor list. Where, as here, the inmate is being allowed to exercise his religion by using his religious name, in conjunction with his commitment name, in documents that he generates and where, further, the receipt of services and benefits is not being conditioned on the inmate waiving his right to use his religious name, he is not being denied anything of constitutional significance.

Having considered the arguments of the parties, the Court concludes that Defendant Culliver is entitled to summary judgment.

## V.   CONCLUSION

Based on the foregoing, it is recommended that the motion for summary judgment of Defendant, Grantt Culliver (Docs. 32, 33) be granted, that Plaintiff's counter-motion for summary judgment (Doc. 39) be denied, and that Plaintiff's action against this Defendant be dismissed with prejudice.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   <u>Objection</u>.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 21st day of September, 2006.

                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE